UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-10387-JEK |
| | ) | |
| PRELUDE RESEARCH, INC. and SPENCER THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS

**KOBICK, J.**

Plaintiff David Hunt contends that his former employer, defendant Prelude Research, Inc., breached its contract with him and that its Chief Executive Officer, defendant Spencer Thompson, committed various torts against him. Pending before the Court is the defendants' partial motion to dismiss, which seeks dismissal of the four tort claims against Thompson. For the reasons that follow, the motion will be granted in part and denied in part. While Hunt adequately alleges that Thompson defamed him by making false representations to his subsequent employer, he fails to plausibly allege claims of intentional interference with contractual relations, intentional infliction of emotional distress, or fraud against Thompson.

### BACKGROUND

The Court recounts the facts based on the allegations in the complaint and "the content of documents . . . sufficiently referenced in the complaint." *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024). The documents incorporated by reference in the complaint include the December 22, 2023 release and separation agreement between Hunt and Prelude; Prelude's

August 30, 2024 letter to Hunt; and the January 11, 2024 announcement of Hunt's new position. *See* ECF 1-1, ¶¶ 36, 40, 42; ECF 8-1, 8-2, 8-3.

Hunt served as the Chief Technology Officer for Prelude from August 2020 until November 2023 and reported to Thompson, Prelude's Chief Executive Officer. ECF 1-1, ¶¶ 3, 7, 29. Founded by Thompson in 2018, Prelude initially offered classes to individuals looking to work in the cybersecurity industry, and then later, upon Hunt's hiring, began developing offensive cybersecurity products. *Id.* ¶¶ 4, 13. When Thompson hired Hunt, Thompson agreed that Hunt would receive 40% of the equity in Prelude not already owned by other investors, and Thompson would retain the other 60% of that equity. *Id.* ¶¶ 7, 10.

Hunt exclusively built Prelude's first offensive cybersecurity product, dubbed "Operator." *Id.* ¶¶ 12-13, 16. He also built Prelude's second product, called "Detect," in December 2021. *Id.* ¶ 17. Through 2022, Hunt was the "face" of Prelude, having spoken at cybersecurity conferences and written dozens of posts on Prelude's behalf. *Id.* ¶ 19.

After learning that Thompson had structured their equity agreement in an "unconventional" manner, Hunt hired an external accounting firm, BBN, to restructure the deal in September 2023. *Id.* ¶¶ 22, 24. Thompson initially supported revising their agreement but, about a month later, removed Hunt from all technical work. *Id.* ¶¶ 24, 27. Before BBN could recommend changes to the agreement, Thompson fired Hunt on October 31, 2023, effective November 3, 2023. *Id.* ¶ 29. Because Hunt had no prior disciplinary issues, he believes that his employment was terminated to prevent a fair restructuring of the equity agreement. *Id.* ¶¶ 30-31.

Prelude provided Hunt with an initial separation agreement that would have ensured a continuation of his salary in exchange for all of Hunt's equity in the company and restrictions on Hunt's future employment. *Id.* ¶ 34. Hunt retained legal counsel and rejected this initial separation

agreement. *Id.* ¶ 36. After further negotiations, Prelude and Hunt entered into a revised release and separation agreement, which was dated December 19, 2023 and signed on December 22, 2023. *Id.*; *see* ECF 8-1. In this contract, Prelude agreed to pay Hunt his annual salary of $275,000 in severance in exchange for, among other things, forfeiture of Hunt's equity in Prelude, a release and waiver of all of his claims against Prelude and its agents, his compliance with a non-disclosure and non-competition agreement, and the parties' agreement not to disparage each other. ECF 8-1, at 1-2, §§ 1-6; ECF 1-1, ¶¶ 36-38. Thompson and Hunt did not communicate between December 19, 2023 and August 30, 2024. ECF 1-1, ¶ 39.

On January 2, 2024, Hunt began working for Praetorian, Inc., which publicly announced his hiring on January 11, 2024. *Id.* ¶ 40; *see* ECF 8-3. That announcement stated that Praetorian is "a leader in advanced offensive security solutions" and that it had appointed Hunt as its "new Vice President of Applied Research." ECF 8-3, at 2. On August 30, 2024, Prelude sent Hunt, and copied Praetorian on, a letter alleging that he had "violated contractual obligations and misappropriated intellectual property." ECF 1-1, ¶ 42; *see* ECF 8-2. The letter asserted, among other things, that Hunt had violated his confidentiality and non-competition agreement with Prelude by taking on a role at Praetorian and by publishing code that resembled code he had developed while at Prelude. ECF 8-2, at 1-2.

Thompson then allegedly "made disparaging and false statements" to Praetorian during the week of September 23, 2024 "that were designed to sabotage Mr. Hunt's new job." ECF 1-1, ¶ 43. Hunt alleges that "Thompson knew that [he] did not violate contractual obligations or misappropriate intellectual property" and engaged in "actions [that] were vindictive by design." *Id.* ¶ 44. Hunt further alleges that "Thompson's campaign" of "bogus misrepresentations" caused Praetorian to terminate his employment on September 27, 2024. *Id.* ¶ 43.

Hunt brought this action in Middlesex Superior Court in December 2024. ECF 1-1. The complaint asserts a breach of contract claim against Prelude (Count I) and tort claims against Thompson for intentional interference with contractual relations (Count II), defamation (Count III), intentional infliction of emotional distress (Count IV), and "fraud/deceit/misrepresentation" (Count V). *Id.* ¶¶ 48-68. Invoking this Court's diversity jurisdiction, the defendants timely removed the case in February 2025. ECF 1.[1] That same month, they moved to dismiss Counts II through V for failure to state a claim. ECF 7. After Hunt opposed that motion and the defendants filed their reply brief, the Court held a hearing and took the matter under advisement. ECF 11, 18, 20.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part

---

[1] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, as the complaint seeks "100,000+" in damages. ECF 1-2. There is also complete diversity of citizenship because Hunt is a citizen of Massachusetts, Thompson is a citizen of Canada, and Prelude is incorporated in Delaware and has a principal place of business in Washington. ECF 1, ¶ 5; ECF 1-1, ¶¶ 1-3.

of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

Hunt does not dispute that by signing the release and settlement agreement with Prelude, he waived all claims relating to conduct that occurred on or before December 22, 2023. *See* ECF 11, at 3-4. The contract provides, in pertinent part, that Hunt "voluntarily releases and forever discharges" Prelude as well as its "present, former and future shareholders, officers, directors, employees, agents, [and] representatives . . . from all actions, causes of action, suits, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, demands and claims" that he "ever had, or now ha[s], or hereafter can, shall or may have, for, upon or by reason of any matter or cause whatsoever arising prior to" December 22, 2023, "whether known or unknown, in law or equity, whether statutory or common law, whether federal, state, local or otherwise." ECF 8-1, at 6. Hunt's claims in this action are, accordingly, limited to the defendants' alleged misconduct after December 22, 2023.

Where, as here, subject matter jurisdiction is premised on diversity of citizenship, "state law supplies the substantive rules of decision" for the parties' claims and defenses. *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023). Here, the release and settlement agreement contains a Massachusetts choice-of-law provision, ECF 8-1, § 9, and Hunt and the defendants have proceeded on the assumption that Hunt's tort claims are likewise controlled by Massachusetts law. When the parties agree on the state law that applies, the Court "is free to forego an independent [choice-of-law] analysis and accept the parties' agreement." *Patton v. Johnson*, 915 F.3d 827, 836 (1st Cir. 2019) (quotation marks omitted). Because the parties' agreement that Massachusetts law

5

applies is reasonable under the circumstances, the Court will accept their choice of law without conducting an independent choice-of-law analysis.

I.  **Defamation.**

The Court begins with Thompson's request to dismiss Count III, which asserts that Thompson defamed Hunt by "knowingly, purposely and maliciously publish[ing] false statements he knew or should have known would result in [Hunt] suffering reputational and financial loss, that would prejudice [Hunt's] employment and livelihood, and which did cause [Hunt] to suffer such losses." ECF 1-1, ¶ 58. To state a claim for defamation, Hunt must adequately allege "that (1) [Thompson] published a defamatory statement of and concerning [Hunt]; (2) the statement was a false statement of fact (as opposed to opinion); (3) [Thompson] was at fault for making the statement . . . ; and (4) [Hunt] suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." *Lawless v. Estrella,* 99 Mass. App. Ct. 16, 18-19 (2020). Hunt also "must specifically identify the allegedly false statement." *Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 53 n.2 (2020) (citing *Flagg v. AliMed, Inc.*, 466 Mass. 23, 37-38 (2013)).

The defendants contend that Hunt's defamation claim must be dismissed because it fails to identify any specific false statement. But the complaint alleges that "Thompson made disparaging and false statements [to] Mr. Hunt's new employer," and that Prelude sent Praetorian "a letter alleging that Mr. Hunt violated contractual obligations and misappropriated intellectual property," even though "Thompson knew that Mr. Hunt did not violate contractual obligations or misappropriate intellectual property." ECF 1-1, ¶¶ 42-44. While the August 30, 2024 letter is written on behalf of Prelude, rather than Thompson individually, ECF 1-1, ¶ 42; ECF 8-2, the complaint can reasonably be read to suggest that, as Prelude's CEO, Thompson authorized the

6

letter as part of his allegedly "vindictive" actions "that were designed to sabotage Mr. Hunt's new job," ECF 1-1, ¶¶ 3, 43-44. Hunt further alleges that those "bogus misrepresentations" led Praetorian to fire him on September 27, 2024. *Id.* ¶ 43. Construed in the light most favorable to Hunt, these allegations, taken together, indicate that Hunt lost his job as a result of Thompson's false representations to Praetorian that Hunt breached his contractual obligations with Prelude and misused its intellectual property. Since Hunt does not merely allege that Thompson ""cast the plaintiff in a negative light,'" he has sufficiently stated a claim of defamation against Thompson, and Count III will not be dismissed. *Kelleher*, 98 Mass. App. Ct. at 53 n.2.

## II.     Intentional Interference with Contractual Relations.

Count II asserts that Thompson intentionally interfered with Hunt's contractual relations by "knowingly, purposely and maliciously sabotag[ing] [Hunt's] employment with his subsequent employer" and doing "so with improper means and motive." ECF 1-1, ¶¶ 53-54. To sustain such a claim, Hunt must plausibly allege that (1) he had a contract with Praetorian; (2) Thompson "'knowingly induced'" Praetorian to breach that contract; (3) Thompson's "'interference, in addition to being intentional, was improper in motive or means'"; and (4) he was harmed by Thompson's actions. *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 84 (2014) (quoting *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715-16 (2011)). As the defendants argue, the complaint fails to allege that Hunt had a binding contract with Praetorian. The mere existence of an employment relationship between him and Praetorian is insufficient. *See G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991) ("In an action for intentional interference with contractual relations, the plaintiff must prove that . . . he had a contract with a third party[.]"); *Am. Priv. Line Servs., Inc. v. E. Microwave, Inc.*, 980 F.2d 33, 35 (1st Cir. 1992) ("Under Massachusetts law, to

prove . . . intentional interference with contractual relations . . . , [the plaintiff] must first show that [he] had a contract.").

Hunt nevertheless maintains that "an advantageous business relationship" is sufficient to state this claim. ECF 11, at 5. Tortious interference with a contractual relationship and tortious interference with an advantageous business relationship are "similar"—but distinct—torts. *Cachopa v. Town of Stoughton*, 72 Mass. App. Ct. 657, 658 n.3 (2008). The latter requires the plaintiff to demonstrate that "he had a business relationship for economic benefit with a third party," not that "he had a contract with a third party." *Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 657 (2006) (quotation marks omitted); *see Comeau v. Town of Webster, Mass.*, 881 F. Supp. 2d 177, 190 (D. Mass. 2012) ("[T]he notable difference between the two torts is the existence of a contract."). The complaint does not assert a claim for tortious interference with an advantageous business relationship. Hunt cannot amend the complaint through his opposition brief, so Count II will be dismissed without prejudice. *See Willitts v. Life Ins. Co. of N. Am.*, No. 18-cv-11908-ADB, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) (collecting cases). But because the allegations in the complaint would otherwise sustain a claim for tortious interference with an advantageous business relationship,[2] and because Thompson acknowledges that Hunt had such a relationship with Praetorian, Hunt will be given leave to file an amended complaint on or before October 14, 2025 that asserts a claim for tortious interference with an advantageous business relationship.

---

[2] The defendants separately contend that Hunt fails to allege that Thompson's interference with Hunt's relationship with Praetorian "was improper in motive or means." *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007). But because Hunt has adequately stated a claim for defamation against Thompson, that allegedly defamatory conduct, at this stage in the proceedings, satisfies the improper motive or means element of a tortious interference claim. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990) (improper motive or means element can be satisfied by, among other things, evidence that the defendant "violated a statute or rule of common law, . . . misrepresented any facts, [or] defamed" the plaintiff).

### III. <u>Intentional Infliction of Emotional Distress.</u>

Count IV asserts that Thompson intentionally inflicted emotional distress on Hunt by "purposely engag[ing] in extreme and outrageous behavior knowing that it would result in [Hunt] experiencing extreme emotional distress." ECF 1-1, ¶¶ 61-62. To make out such a claim, the complaint must plausibly allege that (1) Thompson "'knew or should have known that emotional distress was the likely result of [his] conduct'"; (2) his "'conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community'"; (3) his actions caused Hunt's distress; and (4) Hunt sustained "'severe'" emotional distress. *Butcher v. Univ. of Massachusetts*, 483 Mass. 742, 758 (2019) (quoting to *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010)).

Thompson argues, and the Court agrees, that Hunt fails to sufficiently allege that he suffered severe emotional distress. Indeed, the complaint does not allege that Hunt sustained any emotional distress. It merely pleads that Hunt "has suffered damages" as a result of Thompson's conduct. ECF 1-1, ¶ 63. In his opposition brief, Hunt relies solely upon this allegation to establish severe emotional distress. *See* ECF 11, at 7. Such a conclusory allegation is insufficient to maintain a claim for intentional infliction of emotional distress. *See Polay v. McMahon*, 468 Mass. 379, 388 (2014) (affirming dismissal of intentional infliction of emotional distress claim where "the complaint contain[ed] only the conclusory statement that 'the emotional distress suffered by the [p]laintiffs was severe and of such a nature that no reasonable person could be expected to endure it'"); *Padmanabhan v. City of Cambridge*, 99 Mass. App. Ct. 332, 342-43 (2021) (same because plaintiff had "not made any nonconclusory allegations as to the requisite severe emotional distress he suffered"). Accordingly, Count IV will be dismissed with prejudice.

## IV.     Fraud.

Count V asserts that Thompson engaged in "fraud/deceit/misrepresentation" by "purposely and knowingly ma[king] false representations to" Hunt about his "entitlement to equity in" Prelude upon which he relied, even though Thompson "had no intentions on carrying [them] out." ECF 1-1, ¶¶ 65-67. The allegations in the complaint confirm that those challenged representations occurred before Hunt signed the release and settlement agreement. *See id.* ¶¶ 7-39. That agreement, in turn, extinguished Hunt's equity in Prelude and released all claims that accrued on or before December 22, 2023 relating to the conduct of Prelude and Thompson. ECF 8-1, §§ 2, 5 & Ex. A; *see* ECF 1-1, ¶¶ 36-37. Because Hunt released all claims concerning Thompson's representations before that date, he cannot proceed with this fraud claim.

Hunt resists this conclusion by asserting, in his opposition brief, that Thompson made false statements after the release and settlement agreement was signed. True, the complaint alleges that "Thompson made disparaging and false statements [to] Mr. Hunt's new employer" during "the week of September 23, 2024" that he "knew" to be false. ECF 1-1, ¶¶ 43-44. But this is not the theory that Hunt asserted in the complaint, which ties the fraud claim to Thompson's representations about Hunt's "entitlement to equity" in Prelude. *Id.* ¶ 66. A plaintiff cannot, as discussed, amend his complaint by making new allegations in a brief opposing a motion to dismiss. *See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005) ("additional allegations" against defendants made in plaintiffs' opposition to the motions to dismiss "are not properly before us"). Nor would such a theory support a fraud claim. "The elements of fraud consist of '[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" *Balles v. Babcock Power Inc.*,

476 Mass. 565, 573 (2017) (quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982)). Hunt fails to assert, among other things, that he—as opposed to Praetorian—relied upon Thompson's purportedly false statements about him in September 2024 to his detriment. Accordingly, even Hunt's new theory of fraud cannot be sustained, and Count V will be dismissed with prejudice.

## CONCLUSION AND ORDER

For the foregoing reasons, the defendants' partial motion to dismiss, ECF 7, is GRANTED in part and DENIED in part. Count III survives. Count II is dismissed without prejudice. Counts IV and V are dismissed with prejudice.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: September 30, 2025                                       UNITED STATES DISTRICT JUDGE